217 N.J. Super. 592 (1987)
526 A.2d 725
MARTA HADDOCK, CHRISTINE ADAMS, BRENDA BRINSON, ALICE ALLEN, SALLY HINTON, ARTIS HUDSON, TANYA NORMAN, GAIL ROBINSON, JULIA AGOSTA, BRENDA MORRISON, YVONNE MORRISSEY, LOUISE PICKETT AND MARGARET SMALLEY, PETITIONERS-RESPONDENTS,
v.
DEPARTMENT OF COMMUNITY DEVELOPMENT, CITY OF PASSAIC, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1986.
Decided May 15, 1987.
*594 Before Judges O'BRIEN, SKILLMAN and LANDAU.
Edward A. Trawinski, Jr., argued the cause for appellant (John J. McKniff, City Attorney of the City of Passaic, attorney; John J. McKniff, of counsel and Edward A. Trawinski, Jr., on the brief).
Peggy Earisman argued the cause for petitioners-respondents (Passaic County Legal Aid Society, attorney; Peggy Earisman, on the brief).
John J. Chernoski, Deputy Attorney General, argued the cause for respondent, New Jersey Department of Community Affairs (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; John J. Chernoski, on the brief).
The opinion of the court was delivered by LANDAU, J.S.C., (temporarily assigned).
The Department of Community Development of the City of Passaic (City of Passaic) appeals from a final determination of the Commissioner of the New Jersey Department of Community Affairs (Commissioner) ordering it to pay relocation assistance benefits to the 13 named petitioners-respondents (respondents) under the "Relocation Assistance Act," N.J.S.A. 20:4-1 et seq. (the Relocation Act), the "Relocation Assistance Law of 1967," N.J.S.A. 52:31B-1 et seq. (the Relocation Law), and N.J.A.C. 5:11-1 et seq.
*595 In January and April 1985 certain owners of apartment buildings located in Passaic were notified by the Superintendent of Housing that they were in violation of the City's Property Maintenance Code, § 5.9 et seq., in that there were tenancies which did not comply with Code minimum floor and/or sleeping area requirements. The letters directed these owners to abate the violations. The building owners then served notices to vacate upon respondents who are tenants in the overcrowded apartments. They were subsequently summoned to court where judgments of possession were entered against them under N.J.S.A. 2A:18-61.1(g). The warrants of removal were stayed pending disposition of the matter.
On various dates between April 16 and May 14, 1985, respondents made written requests to the City of Passaic for relocation assistance benefits. By letters dated April 29 and May 28, 1985, the City of Passaic denied these requests. It based its denial on N.J.A.C. 5:11-2.1(a) which provides that, "[w]henever a ... unit of local government undertakes a program of ... code enforcement ... that causes the displacement of people ... the unit of local government shall provide relocation payments and assistance to all lawful occupants who are displaced ..." (Emphasis added) The City of Passaic maintained that the tenancies were illegal since the number of occupants exceeded the Code maximum permitted for the dwelling units, either by reason of square foot or sleeping room minimum standards. The stipulation of facts indicates that for the most part respondents' apartments have been in violation of the City's Property Maintenance Code since the inception of their respective tenancies. Others came into violation because of births or other additions to the living unit. It was stipulated that none of the respondents were aware of the local Code minimums. The landlords were apparently satisfied to continue their tenancies despite such violations until the City took action.
The City of Passaic's denial of relocation assistance benefits was appealed to the Bureau of Housing Services of the New Jersey Department of Community Affairs. That Bureau denied *596 the appeal, agreeing with the City's determinations that respondents were not "displaced" individuals within the meaning of N.J.A.C. 5:11-1.2, since they did not "lawfully occupy" the apartments which they were required to vacate. The present respondents were advised of their right to an administrative hearing before the Division of Housing and Development of New Jersey, Department of Community Affairs, and requested such a hearing.
On June 26, 1985, the matters were transmitted to the Office of Administrative Law as contested cases. The A.L.J. apparently consolidated the individual hearing requests into a single matter rather than considering the specific facts on each appeal. At a prehearing conference the parties agreed to enter into a joint stipulation of facts and to submit the matter for summary decision. After the stipulation of facts and briefs were filed the A.L.J. issued an "Initial Decision" on September 12, 1985, which recommended that all respondents should be entitled to relocation assistance benefits from the City of Passaic under the Relocation Act, the Relocation Law and regulations promulgated thereunder. The Commissioner's determination adopted these findings and recommendation of the A.L.J.
On appeal, the City of Passaic contends that the Commissioner's final determination ordering it to provide relocation assistance was arbitrary, unreasonable and illegal. Specifically, it argues that the Commissioner's affirmance, based on a finding that the respondents were "lawful occupants" of their apartments notwithstanding that their tenancies violated the minimum floor and/or sleeping requirements of the City's Property Maintenance Code, was erroneous as a matter of law. Inasmuch as the facts were stipulated, the issue presented on appeal is strictly a legal one. Were the respondents lawful occupants?
We begin by noting that interpretation by an administrative agency of the statute it is responsible to administer is entitled to some weight, with due regard to the agency's *597 expertise, but it must be consistent with the policy and language of the legislation. Fiola v. N.J. Treas. Dept., 193 N.J. Super. 340, 347 (App.Div. 1984).
In McNally v. Middletown Tp., 182 N.J. Super. 622, 625-626 (1982), we recognized a statutory design to establish a uniform policy for fair and equitable treatment of persons displaced, not only by acquisition, condemnation, or voluntary rehabilitation programs, but by building code enforcement activities. As set forth in N.J.S.A. 20:4-2, such policy is to be uniform as to relocation payments, advice, housing availability, and state reimbursements.
The Legislature has spoken in several ways with respect to relocation. N.J.S.A. 2A:18-61.1(g) permits removal of residential tenants, their assigns and undertenants from buildings and tenements leased for residential purposes where, among other statutory exceptions:
... The landlord or owner (1) seeks to permanently board up or demolish the premises because he has been cited by local or State housing inspectors for substantial violations affecting the health and safety of tenants and it is economically unfeasible for the owner to eliminate the violations; (2) seeks to comply with local or State housing inspectors who have cited him for substantial violations affecting the health and safety of tenants and it is unfeasible to so comply without removing the tenant; simultaneously with service of notice of eviction pursuant to this clause, the landlord shall notify the Department of Community Affairs of the intention to institute proceedings and shall provide the department with such other information as it may require pursuant to rules and regulations ...
In 1967, the Legislature enacted the "Relocation Assistance Law of 1967," (N.J.S.A. 52:31B-1 et seq.), providing, among other things, "for relocation assistance payments to persons or businesses displaced on account of acquisition of real property for a public use, or on account of a program of law enforcement, or on account of a program for voluntary rehabilitation of dwelling units." N.J.S.A. 52:31B-4(a). N.J.S.A. 52:31B-4(c) provides for relocation assistance payments not to exceed $200. The Relocation Assistance Law does not address directly the question of lawful occupancy.
*598 N.J.S.A. 20:4-1 et seq. was enacted in 1972 as the "Relocation Assistance Act." As previously noted, the declaration of policy in that act, by express language, and as interpreted in McNally, extends its provisions to displacement caused by building code enforcement activities, as well as other designated causes for displacement. N.J.S.A. 20:4-4(a) authorizes "fair and reasonable relocation payments to displaced persons for actual reasonable expenses of moving." It also permits the election of payments under 20:4-4(b) in amounts not to exceed $300 for moving and $200 for dislocation allowance. No reference is made in this section of the statute to the question of lawful occupancy. In N.J.S.A. 20:4-6, however, there is authorization for additional payments to displaced persons, under certain circumstances. The statute interposes a requirement that a dwelling be "actually and lawfully occupied by such displaced person for not less than 90 days prior to the initiation of negotiations for acquisition ..." N.J.S.A. 2A:18-61.1(g) provides that no warrant for possession shall be issued unless there has been compliance with both the Housing Relocation Act and the Housing Relocation Law of 1967.
Both the Relocation Assistance Act and the Relocation Assistance Law of 1967 authorize the promulgation of appropriate regulations.
Consistent with the purpose to achieve uniform, fair and equitable treatment of persons displaced due to state and local programs of acquisition, Code enforcement and voluntary rehabilitation of buildings, the Department of Community Affairs promulgated regulations which are embodied in N.J.A.C. 5:11-1.1 et seq. In N.J.A.C. 5:11-1.2, the regulations set forth as the definition of "displaced"[1] the following:
... means required to vacate any real property lawfully occupied pursuant to any order or notice of any displacing agency on account of a program of *599 acquisition, code enforcement proceedings or voluntary rehabilitation of buildings.
The definition of "displaced persons" in these administrative rules was considered by us in McNally against a contention that it exceeded the statutory definition of "displaced persons," and we concluded that the regulation did not exceed the scope of the broad delegation of power to the Commissioner under N.J.S.A. 20:4-10 and N.J.S.A. 52:31B-10 and that the regulation was not arbitrary, capricious or unreasonable.[2] Given the regulatory prerequisite which has been established, and later repromulgated by the Department, and given this court's prior approval of the regulatory requirement of lawful occupancy in McNally, we must determine whether the Commissioner properly reversed the Bureau of Housing Services' denial of relocation assistance benefits to the respondents. As earlier observed, we may give weight to the Agency's interpretation of a statute it is responsible to administer.
The basis for the decision of the A.L.J., adopted by the Commissioner, was that respondents' occupancies were lawful, in that the lessor-owners accepted rentals from them with no intent to seek evictions until cited by the City for overcrowding under the Property Maintenance Code. The A.L.J. cited McNally and Rowe v. Pittsgrove Township, 153 N.J. Super. 274 (Law Div. 1977), rev'd on other grounds 172 N.J. Super. 209 (App.Div. 1980), as examples of cases where relocation assistance was granted notwithstanding violations of law. He also cited two earlier Office of Administrative Law cases. In all the cases cited, the unlawful conditions were not attributable to the occupants. In Hickey v. Park Ridge, 5 N.J.A.R. 291, however, adopted by the Commissioner on February 7, 1983 (not cited by the A.L.J.), a displaced occupant of a basement apartment was *600 determined not to be entitled to relocation assistance or rental assistance payment because her rental occupancy was unlawful under the applicable zoning ordinance, even though the occupancy was otherwise lawful. In so doing the Administrative Law Judge and Commissioner relied upon an unreported decision of this court, Moran v. Twp. of Randolph, A-649-80T2 (App.Div. Jan. 20, 1983) certif. den. 94 N.J. 573 (1983). Ordinarily, in compliance with R. 1:36-3, we would not refer to this unreported decision. Inasmuch as it was cited and considered by the Administrative Law Judge in the present case, and quoted in the reported Hickey decision, we deem it necessary to quote the Moran extract relied upon by the Commissioner in Hickey:
Clearly petitioner is not entitled to relocation assistance. The tenancy here commenced and continued in direct violation of an existing law. It defies common sense to assert that the Legislature in N.J.S.A. 52:31B-1 intended to make a governmental unit pay displacement assistance where it seeks to end such a violation. We will not infer such an absurd intent on its part ... [5 N.J.A.R. at 296]
In the present case, the A.L.J. and the Commissioner distinguished Moran, and by implication his previous decision in Hickey, by noting that these cases upheld denial of relocation benefits where the tenant's occupation was unlawful by reason of violation of a zoning ordinance, as distinct from the Building Code type enforcement encompassed in N.J.S.A. 20:4-1 et seq. In this regard, however, they chose to ignore the recognition in McNally that relocation benefits may be denied where occupancy was unlawful by reason of failure to have a proper certificate of occupancy. 182 N.J. Super. at 627. A certificate of occupancy requirement, of course, is a normal incident of Code enforcement. Indeed, in the present case the record discloses that at least some of the violations were discovered when applications for certificates of occupancy were submitted and denied.
The A.L.J. in this case correctly recognized that occupants were denied relocation assistance in Moran primarily because the statutory and regulatory definitions do not embrace zoning *601 ordinance enforcement. See Hickey, 5 N.J.A.R. at 296. However, consideration of the question of lawful occupancy as required under the uniform regulations of the Department previously approved by us in McNally is not limited to zoning violations, nor is it resolved by merely noting the owners' acceptance of the occupancy.
The essence of the problem recognized in the previously quoted excerpt from Moran is that the Legislature could not have intended to approve relocation compensation to persons displaced as a result of Code violations primarily attributable to their own conduct. Thus, the inquiry into lawful occupancy must begin with whether the tenancy is known to and accepted by the landlord, but it cannot end there. The tenant must not be the one who primarily causes the violation which leads to the relocation. This concept is also encompassed within the meaning of "lawful occupancy."
On the other hand, we do not share the view expressed by the City of Passaic, and opposed by respondents, that the lawful occupancy condition of the regulations must extend to unlawful occupancies however occasioned, lest municipalities be discouraged from implementing enforcement programs because of the high relocation costs involved. The Department has previously recognized the sterility of this argument by adopting N.J.A.C. 5:11-2.3, which is applicable to evictions under N.J.S.A. 2A:18-61.1(g). It provides that where a landlord is to be cited for a violation pursuant to an illegal occupancy which could potentially result in eviction under N.J.S.A. 2A:18-61.1(g)(3), the following shall be included as an insert sent with the violation notice:
IF, IN SEEKING TO CORRECT THE ILLEGAL OCCUPANCY FOR WHICH YOU HAVE BEEN CITED, IT IS NECESSARY FOR YOU TO EVICT ONE OR MORE TENANTS TO COMPLY, YOU MUST NOTIFY THOSE TENANTS OF THEIR POTENTIAL ELIGIBILITY FOR RELOCATION ASSISTANCE. FURTHER INFORMATION REGARDING YOUR RESPONSIBILITIES AS OWNER PURSUANT TO REGULATIONS CONCERNING EVICTION AND RELOCATION MAY BE OBTAINED BY CONTACTING THE FOLLOWING:
DEPARTMENT OF COMMUNITY AFFAIRS
DIVISION OF HOUSING AND DEVELOPMENT

*602 OFFICE OF LANDLORD-TENANT RELATIONS
CN 804
TRENTON, NEW JERSEY 08625
TELEPHONE: XXX-XXX-XXXX
Clearly, neither the Legislature nor the Department of Community Affairs can be deemed to have intended to enact a "Catch-22" program which afforded relocation benefits to tenants displaced by Code enforcement activities, yet simultaneously deprived them of such benefits because Code violations over which they had no control rendered their tenancies unlawful.
We think it equally unreasonable to interpret the governing statutes and regulations in a manner which rewards tenants with cash payments where forced relocation results from their own conduct.
In regard to Passaic's concern that local governments may be discouraged from Code enforcement activity because of heavy tenant relocation costs, we note that N.J.S.A. 20:4-4.1 provides that if displacements occur by reason of Housing or Construction Code enforcement and the owner has been held liable for civil or criminal penalties for such violations, the relocation costs under N.J.S.A. 20:4-4 and 4-6 shall be paid by the owner to the public agency. This provision is reinforced by substantial interest charges for late payment, and the authorization to impose a lien upon the subject property for unpaid relocation costs. Thus, the Legislature has created a double incentive program; the landlord is encouraged not to permit violations, and the local agency can receive reimbursement for relocation costs incurred by its enforcement efforts.
We reconcile the previously considered statutes, regulations, and decisions with our understanding of the legislative and regulatory intent by holding that in order to be eligible for relocation benefits as a lawful occupant: (a) the occupancy must be lawful in the sense that it is not the result of a trespass or unauthorized sublease, but one recognized by the owner; and (b) the Code violation must be one not primarily *603 caused by the occupant's own conduct but by factors for which the landlord is liable under N.J.S.A. 20:4-4.1.[3] In the event that, as here, condition (a) is satisfied, but there has been no prosecution under N.J.S.A. 20:4-4.1, an occupancy should be presumed lawful for the purpose of relocation benefits unless it is established by agreement or by administrative hearing that the Code violation was primarily attributable to conduct of the tenant.
In the present case, most of the respondents, unaware of the Code requirements, were permitted by the property owner to lease and occupy even though they did not meet minimum space or sleeping area requirements when they commenced their tenancies. We conclude that the Code violation was not primarily attributable to conduct of such tenants. As to those respondents, we affirm the Commissioner's determination.
As to the respondents whose increase in number of occupants after entry into the tenancy relationship created a violation, the issue of primary responsibility for such violation must be remanded to the Commissioner for findings and determination thereon based upon the facts of each case. Questions to be explored should include, without limitation, the issues of knowledge, sanction or acquiescence of the respective owners in any violation, and the nature of tenants' conduct which caused such violation.
Affirmed as to: Louise Pickett, Brenda Morrison, Yvonne Morrissey, Brenda Brinson, Margaret Smalley, Artis Hudson, Tanya Norman, Alice Allen, Marta Haddock and Julia Agosta.
Reversed and remanded as to: Christine Adams, Gail Robinson, and Sally Hinton.
We do not retain jurisdiction.
NOTES
[1] Similar "lawful occupancy" conditions appear in N.J.A.C. 5:11-2.1 and 5:11-3.5(a).
[2] Although the regulation has been amended since the date of the McNally holding, the definition of the term "displaced" as encompassing the vacating of "real property lawfully occupied" has been continued. See, 16 N.J.R. 177 (1984).
[3] We express no view on whether relocation benefits may be paid when displacement occurs as the result of zoning ordinance enforcement, inasmuch as that question is not here presented.