M.C. ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF–RESPONDENT, v. RAJNIKANT B. SHAH; VASUDEV TRIVEDI; CHIMAN PATEL; B. CHODAVADIA; ATUL R. SHAH; PRAVIN SOLANKI; REMESH DALAL; JYOTSNA PATEL; S. MAJMUNDAR; JITENDRA LACKADAWALA; VALLABH SHELADIA; VICKRAM SOLANKI; SURESH A. SHAH; BHIKHA BAMBROLIA; RAMESH PATEL; MEHENDRA SHAH; SUDHABEN B. DESAI; RATANLAL DALAL; SURENDRAKUMAR BHATT; MARIA RAVENA; LILUBHAI MOCHI; GORDON C. PATEL; DHANSUKH PATEL; MAHENDRA CHOKSHI; BHAGU PATEL; KALYANBHIN BORAD; VIJAY PATEL; BHANUMATI JOSHI; DEVENDRA VYAS; RAJENDRA P. SHAH; BHOGHIBHAI PATEL; VISHNU D. PATEL; KISHOR PATEL; AJIT SHAH; AJIT SHAH; KANTILAL SHAH; ARUNA BHATIA; NATHUBHAI PATEL; JAYESH PARIKH; RAJAN SAVALIA; NITIN DOSHI; CHANDRAVADN B. SHAH; SHANTILAL PATEL; MANU PATEL; ANNA PEREZ; SURESH PARIKH; INRAMDAN PATEL; UPRENDRU SHAH; CHANDRAHANT PATEL AND KAUNUERSI LAVANI, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted March 22, 1988—Decided June 30, 1988.

Before Judges PRESSLER, BILDER and SKILLMAN.

*Peter van Schaick,* attorney for appellants.

*Lum, Hoens, Abeles, Conant & Danzis,* attorneys for respondent (*Gina A. Calogero,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiff owns nine multiple dwellings located in Hoboken. Defendants are tenants of 50 apartments in the buildings.

Upon the expiration of their prior leases, plaintiff sent the tenants new leases. These leases contained a new provision limiting occupancy to either four or five persons, depending upon the size of a tenant's apartment. These occupancy limits were established in accordance with a regulation adopted by the Department of Community Affairs, *N.J.A.C.* 5:10–22.3, pursuant to the Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A–1 *et seq.* The apartments of at least some defendants were

occupied by more persons than allowed under the occupancy limits.

Defendants refused to sign the new leases. Plaintiff then brought summary dispossess actions in the Special Civil Part to evict defendants. These actions were consolidated and transferred to the Law Division.

Plaintiff moved for summary judgment and defendants moved to dismiss the complaints. The trial court concluded in a letter opinion dated March 5, 1987 that the provisions of the proposed new leases limiting the occupancy of the apartments were reasonable and that defendants could be evicted for refusing to sign them. The court also concluded that defendants would not be entitled to any relief even if plaintiff and its predecessors in title had been aware of the overcrowding in their apartments, because "it would offend public policy to apply estoppel against the landlord in this situation." Accordingly, the trial court entered orders on March 9 and 23, 1987 awarding plaintiff possession of the apartments. However, upon defendants' application, the trial court entered another order on March 31, 1987, which permitted defendants to avoid the judgments of possession by executing leases containing the occupancy limits. It appears that all of the defendants availed themselves of this opportunity and continue to occupy their apartments.[1]

Defendants appealed from the trial court's orders upholding plaintiff's right to include occupancy limits in the renewal leases. Plaintiff cross appealed from the part of the trial court's order of March 31, 1987 which permitted defendants to avoid eviction by signing renewal leases containing occupancy

---

[1]The record does not disclose how many of defendants' tenancies violated the occupancy limits at the time they signed the leases, whether those defendants have now complied with the limits and, if so, how that compliance has been accomplished.

limits. However, plaintiff failed to file a timely brief, which resulted in a dismissal of its cross appeal.[2]

We agree with the trial court's conclusion that a landlord is not required to wait for a code enforcement action before requiring its tenants to comply with the occupancy limits imposed by *N.J.A.C.* 5:10–22.3. *See Floral Park Tenants v. Project Holding, Inc.*, 152 *N.J.Super.* 582, 597–598 (Ch.Div. 1977), aff'd o.b. 166 *N.J.Super.* 354 (App.Div.1979), certif. den. 81 *N.J.* 278 (1979). We also agree that an occupancy provision in a lease is an appropriate means for securing such compliance and therefore that a landlord may require even tenants who are then in violation of the occupancy limits to sign leases containing those limits. However, we conclude that a landlord which seeks to enforce occupancy limits against such tenants may be liable for the same or similar benefits as the tenants would be entitled to receive if they were removed as a result of code enforcement proceedings. Since the judgment entered by the trial court failed to provide such relief, we reverse.

The subsection of the Anti–Eviction Act which specifically addresses the subject of removal of tenants in order to correct conditions of illegal occupancy is *N.J.S.A.* 2A:18–61.- 1(g)(3). This subsection provides that grounds for removal of a tenant are established where

> [t]he landlord or owner ... seeks to correct an illegal occupancy because he has been cited by local or State housing inspectors and it is unfeasible to correct such illegal occupancy without removing the tenant.

A landlord's right to remove a tenant pursuant to *N.J.S.A.* 2A:18–61.1(g)(3) is subject to the significant condition that no warrant for removal may be issued until there has been compliance with the provisions of the relocation assistance laws, *N.J.S.A.* 52:31B–1 *et seq.* and *N.J.S.A.* 20:4–1 *et seq.* The forms of such assistance include helping displaced persons secure

---

[2]By order dated June 13, 1988 we permitted plaintiff to file a brief in opposition to defendants' appeal but denied its motion to reinstate the cross appeal.

decent, safe and sanitary housing at rents within their means, *N.J.S.A.* 52:31B–5(b)(2), cash payments, *N.J.S.A.* 52:31B–4, *N.J. S.A.* 20:4–4, and replacement housing, *N.J.S.A.* 20:4–6. Such benefits may be claimed by a tenant who is evicted as a result of enforcement of regulations establishing occupancy limits, unless the tenant's own conduct was the primary cause of the overcrowding. *Haddock v. Dept. of Community Development, City of Passaic,* 217 *N.J.Super.* 592 (App.Div.1987), certif. den. 108 *N.J.* 645 (1987). Therefore, defendants may have been entitled to relocation assistance if they had been displaced by state or local action to enforce the occupancy limits established under *N.J.A.C.* 5:10–22.3. Moreover, plaintiff could have been held liable for such costs under *N.J.S.A.* 20:4–4.1. *See Haddock v. Dept. of Community Development, City of Passaic, supra,* 217 *N.J.Super.* at 602.

Plaintiff contends that it may impose occupancy limits upon its present tenants pursuant to *N.J.S.A.* 2A:18–61.1(i) without providing the relocation assistance to which the tenants would be entitled under *N.J.S.A.* 2A:18–61.1(g)(3). *N.J.S.A.* 2A:18–61.-1(i) provides that grounds for removal of a tenant are established where

[t]he landlord or owner proposes, at the termination of a lease, reasonable changes of substance in the terms and conditions of the lease, ... which the tenant, after written notice, refuses to accept....

It is clear on its face that *N.J.S.A.* 2A:18–61.1(i) is not specifically addressed to code enforcement. Rather, this subsection simply recognizes the right of a landlord to require its tenants to comply with reasonable rules and regulations. For example, the rules and regulations included in the new leases tendered to defendants would prohibit them from overloading electrical systems, storing toxic materials in storerooms, leaving personal belongings in common areas, using common areas for hanging clothing or cooking, causing physical damage to the premises, engaging in illegal or immoral activities, or interfering with the peace and quiet of other tenants. Tenants can comply with such rules and regulations simply by conducting themselves in

an appropriate manner. On the other hand, tenants of an overcrowded apartment can comply with an occupancy limit only by some or all of the occupants removing themselves from the leased premises. Thus, the inclusion of occupancy limits in a lease is fundamentally different from the adoption of rules and regulations governing the day-to-day conduct of tenants.

It is well established that a legislative enactment should be construed as a whole and that every effort should be made to harmonize interrelated provisions. *State v. Green*, 62 *N.J.* 547, 554 (1973). *N.J.S.A.* 2A:18–61.1(g)(3) is the subsection of the Anti–Eviction Act which deals specifically with the displacement of tenants as a result of a landlord seeking to correct conditions of illegal occupancy. This subsection seeks to balance the interests of landlords and tenants by permitting eviction to correct conditions of illegal occupancy but requiring relocation assistance to be provided to evicted tenants. On the other hand, *N.J.S.A.* 2A:18–61.1(i) does not deal specifically with the eviction of tenants to correct conditions of illegal occupancy but simply authorizes a landlord to establish reasonable rules and regulations governing the conduct of its tenants. Consequently, we do not believe the Legislature intended, when it included subsection (i) in *N.J.S.A.* 2A:18–61.1, to permit tenants to be deprived of relocation assistance by a landlord enforcing occupancy limits through renewal leases. Therefore, in order to harmonize the provisions of subsections (g)(3) and (i) of *N.J.S.A.* 2A:18.61.1, we conclude that a landlord who demands that a tenant sign a renewal lease containing a new occupancy limit which will force the tenant or some members of his household to relocate may be liable for relocation assistance comparable to what the tenant would have received under *N.J.S.A.* 2A:18–61.1(g)(3).[3] If such assistance is not provided,

---

[3]We held in *Haddock v. Dept. of Community Development, City of Passaic, supra,* 217 *N.J.Super.* at 602–603, that a tenant displaced as a result of a landlord's efforts to comply with occupancy limits imposed under *N.J.A.C.* 5:10–22.3 is entitled to relocation assistance benefits under *N.J.S.A.* 2A:18–61.-

the demand that the tenant agree to an occupancy limit may be found not to satisfy the reasonableness requirement of *N.J.S.A.* 2A:18–61.1(i). *Cf. Young v. Savinon,* 201 *N.J.Super.* 1 (App. Div.1985); *Royal Associates v. Concannon,* 200 *N.J.Super.* 84 (App.Div.1985).

■ Finally, we note that enforcement by a state or local agency of a building code provision, such as the occupancy limits imposed under *N.J.A.C.* 5:10–22.3, is an apparent prerequisite to the award of relocation assistance benefits under *N.J.A.C.* 5:11–1 *et seq.. See N.J.A.C.* 5:11–2.1; *N.J.A.C.* 5:11–7.1.[4] However, this circumstance would not preclude a court from awarding comparable relief directly against a landlord if a landlord's effort to comply with a building code provision prior to any enforcement action would result in the displacement of its tenants. The precise form of relief which may be appropriate in the event defendants prevail is within the trial court's discretion, which should be exercised in furtherance of the policies reflected in *N.J.S.A.* 2A:18–61.1(g)(3).

Therefore, we reverse the summary judgment granted in favor of plaintiff and remand for further proceedings in conformity with this opinion.

---

1(g)(3) only if the overcrowding was not primarily caused by the occupant's own conduct but rather resulted from circumstances for which the landlord could be held liable under *N.J.S.A.* 20:4–4.1. *See N.J.A.C.* 5:11–2.1(d). Thus, a tenant who is responsible for the overcrowding of his own apartment may be required to sign a lease containing an occupancy limit without being offered relief comparable to relocation assistance benefits. In determining responsibility for any violations of the occupancy limits imposed under *N.J.A.C.* 5:10–22.3, "[q]uestions to be explored should include, without limitation, the issues of knowledge, sanction or acquiescence of the respective owners in any violation, and the nature of tenants' conduct which caused such violation." *Haddock v. Dept. of Community Development, City of Passaic, supra,* 217 *N.J.Super.* at 603.

[4] On remand, it may be appropriate for the trial court to solicit the views of the Department of Community Affairs concerning the availability of relocation assistance where a landlord seeks to correct a condition of illegal occupancy prior to initiation of a code enforcement action.