193 N.J. Super. 340 (1984)
474 A.2d 23
NICHOLAS FIOLA, JR., PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, POLICE AND FIREMEN'S RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1984.
Decided April 9, 1984.
*343 Before BOTTER, PRESSLER and O'BRIEN.
Samuel J. Halpern argued the cause for appellant.
Robert K. Walsh, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Robert K. Walsh, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This is an appeal from a final determination of the Board of Trustees of the Police and Firemen's Retirement System (PFRS), which administers N.J.S.A. 43:16A-11.1, et seq. (Police and Firemen's Retirement System of New Jersey). The issue presented involves N.J.S.A. 43:16A-11.2, which accords the option of a deferred retirement allowance to those members terminating their employment after ten years of creditable service prior to reaching the age of 55, provided the termination was not the result of "removal for cause on charges of misconduct or delinquency." PFRS, rejecting the contrary recommendation of the administrative law judge, interpreted this provision as resulting in a forfeiture of the deferred retirement allowance option if the election is not made within two years after termination of actual service. It accordingly rejected the application for a deferred retirement allowance made by petitioner Nicholas Fiola, Jr., more than seven years after his separation from service but prior to his reaching age 55. Fiola appeals. We reverse.
The facts are essentially uncontroverted, and PFRS concedes that but for the timeliness issue Fiola would be entitled to a deferred retirement allowance. Fiola was first employed as a firefighter by the Township of Millburn in January 1955 and was enrolled as a PFRS member in February 1955. He resigned effective July 1974, his last contribution to PFRS being made in that month. He was then 46 years old and would reach *344 the age of 55 in June 1983. Fiola's resignation was motivated by his alcoholism problems which had resulted in disciplinary proceedings being brought against him. The record indicates that he opted to resign rather than to face the disciplinary charges in order to avoid a discharge for cause and thereby to protect his right to a deferred retirement allowance. Correspondence between his then attorney and PFRS made clear that if he voluntarily resigned and the disciplinary proceedings were consequently dismissed, his pension rights would not be jeopardized. PFRS does not take a contrary position now.
The record also discloses that in March 1976 PFRS sent Fiola a document entitled "Member's Expiration Notice" advising that his account would expire on July 1, 1976. The notice also advised that "If you have resigned and do not plan to return to service before the date of expiration, you are eligible to apply for the withdrawal of your aggregate contributions." A withdrawal application was in fact enclosed. Also contained in the notice was this advisory:
CAREFULLY REVIEW THE REVERSE SIDE OF THIS FORM. IF YOU CAN QUALIFY FOR A RETIREMENT BENEFIT, NOTIFY US IMMEDIATELY THAT YOU WISH TO APPLY FOR A SPECIFIC RETIREMENT BENEFIT, SINCE YOUR FAILURE TO NOTIFY OUR OFFICE WILL JEOPARDIZE YOUR ELIGIBILITY FOR BENEFITS.
The reverse side of the notice form contained a list of various retirement possibilities, including service retirement for those who had already reached 55 years of age, special retirement for those who had not reached age 55 but who had 25 years or more of creditable service, deferred retirement for those who had the requisite number of years of service and who had not yet reached the age of 55, and disability retirement for those who were totally and permanently disabled from the continued performance of duties. There was also a statement of insurance benefits advising that no such benefits would be payable to a member applying for a deferred retirement allowance who died before reaching the age of 55 nor to a member under 55 who had withdrawn his aggregate contributions. No application *345 form was, however, included with the notice other than that pertaining to withdrawal of contributions.
Fiola did not respond to this notice, testifying at the hearing before the administrative law judge that he had no recollection of having received it. Nor did he subsequently make application for withdrawal of his contributions. Nor did PFRS tender his contributions to him. In September 1981 he first began to pursue the matter of his deferred retirement allowance and in January 1982 made formal request for an application. The denial of that request resulted in his appeal to PFRS, which referred the matter to an administrative law judge. The administrative law judge was of the view that since Fiola had not withdrawn his contributions prior to reaching age 55 he was still entitled to elect a deferred retirement allowance. PFRS disagreed, and this appeal followed.
The statutory provision in question, N.J.S.A. 43:16A-11.2, not heretofore construed in a reported decision, provides in pertinent part as follows:
Should a member, after having established 10 years of creditable service, be separated voluntarily or involuntarily from the service, before reaching age 55, and not by removal for cause on charges of midconduct or delinquency, such person may elect to receive the payments provided for in section 11 of P.L. 1944, c. 255[1] [N.J.S.A. 43:16A-11] or section 16 of P.L. 1964, c. 241,[2] [N.J.S.A. 43:16A-11.1] or a deferred retirement allowance, beginning on the first day of the month following his attainment of age 55 and the filing of an application therefor, which shall consist of:
(1) An annuity which shall be the actuarial equivalent of his aggregate contributions at the time of his severance from the service and
(2) A pension in the amount which, when added to the member's annuity, will provide a total retirement allowance of 2% of his average final compensation multiplied by the number of years of his creditable service up to 30 plus 1% of his average final compensation multiplied by the number of years of creditable service over 30, provided that such inactive member may elect to receive payments provided under section 11 of P.L. 1944, c. 255 or section 16 of P.L. 1964, c. 241 if he had qualified under that section at the time of leaving service, except that in order to avail himself of the option, he must exercise such option at least 30 days before the effective date of his retirement. If such inactive member shall die before attaining age 55, his aggregate contributions shall be paid in accordance with section 11 of P.L. 1944, c. 255 and, in addition if such inactive member shall die after attaining age 55 but before filing an application for retirement benefits pursuant to this section or section 16 of *346 P.L. 1964, c. 241 and has not withdrawn his aggregate contributions, or in the event of death after retirement, an amount equal to one-half of the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service shall be paid to such member's beneficiary.
The statutory plan is in our view plain. A member leaving service who is not removed for cause, who has ten years of creditable service, and who has not yet attained the age of 55 is accorded three options. The first option is to receive from PFRS the full amount of his aggregate contributions pursuant to N.J.S.A. 43:16A-11. That option is, in fact, available to anyone leaving service for any reason without a retirement allowance. The second option is the election of a special retirement pursuant to N.J.S.A. 43:16A-11.1. That option is available only to those having served 25 years of creditable service. The third option is the deferred retirement allowance with its two components of an annuity and a pension. It is clear that of the three options it is only the deferred retirement allowance whose benefits are not immediately available to the member. If that is the election he makes, he receives no benefits at all until age 55.
The delay in receipt of benefits which characterizes the deferred retirement allowance available pursuant to N.J.S.A. 43:16A-11.2 is a singular feature of that retirement plan. Not only do the other options of that section provide for immediate receipt of benefits but so also do all other available types of pension benefits, including ordinary age and service retirement pursuant to N.J.S.A. 43:16A-5, accidental disability retirement pursuant to N.J.S.A. 43:16A-7, and ordinary disability retirement pursuant to N.J.S.A. 43:16A-8. It is therefore only in the case of a deferred retirement allowance that there is characteristically a substantial hiatus between the actual separation from service and the commencement of benefit payments.
The statute itself does not specify a time period following separation from service within which an election among the available options must be made. PFRS imposed a two-year *347 time period on the election of a deferred retirement allowance relying on N.J.S.A. 43:16A-3(3), which provides that
Should any member withdraw his aggregate contributions, or become a beneficiary or die, or if more than two years have elapsed from the date of his last contribution to the system, he shall thereupon cease to be a member.
It is the view of PFRS that once membership ceases pursuant to that section then, irrespective of whether the member had withdrawn his aggregate contributions, he has lost the necessary membership status required to make any election at all. PFRS consequently takes the position that the former member is then entitled only to the return of his aggregate contributions whenever he should choose to apply for them pursuant to N.J.S.A. 43:16A-11.
While we are aware that the interpretation by an administrative agency of the statute it is responsible to administer is entitled to some weight, we are nevertheless not bound by that interpretation where, as here, we are satisfied that it is contrary to legislative intent and plain statutory meaning. See, e.g., Women's Medical Center v. Finley, 192 N.J. Super. 44, 55 (App.Div. 1983), certif. den., 96 N.J. 279 (1984); Marsh v. Finley, 160 N.J. Super. 193, 200 (App.Div. 1978), certif. den., 78 N.J. 396 (1978); Smith v. Consolidated Police & Firemen's Pension, 149 N.J. Super. 229, 233 (App.Div. 1977), certif. den., 75 N.J. 8 (1977). And see Zigmont v. Teachers' Pension, etc. Fund Trustees, 182 N.J. Super. 50, 54 (App.Div. 1981), rev'd on other grounds, 91 N.J. 580 (1983).
It is virtually axiomatic that statutory pension provisions are to be liberally construed in favor of public employees and that pensions represent not merely the gratuity of a benevolent governmental employer but rather that they constitute deferred compensation earned by the employee during his years of service. See Masse v. Public Employees Retirem. Sys., 87 N.J. 252, 259-261 (1981); Uricoli v. Police & Fire Retirem. Sys., 91 N.J. 62, 70-73 (1982). Forfeiture of earned pension rights, therefore, constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loath *348 to permit even in the case of employee misconduct unless that penalty has been clearly mandated by the Legislature. See, e.g., Masse v. Public Employees Retirem. Sys., supra; Uricoli v. Police & Fire Retirem. Sys., supra; Eyers v. Public Employees' Retirem. Sys., 91 N.J. 51 (1982).
These principles, in view of the applicable statutory language, persuade us that denying this petitioner his deferred retirement allowance simply because he did not elect that option while he was still technically a member pursuant to N.J.S.A. 43:16A-3(3) would constitute a pension forfeiture which the Legislature not only did not mandate but which it also patently did not intend. As we have already noted, the deferred retirement allowance statute itself imposes no such condition. All it requires in order to obtain the receipt of benefits if the other substantive statutory conditions are met is that an application be filed. N.J.S.A. 43:16A-11.2 also expressly permits an election to withdraw aggregate contributions or to apply for a special retirement pension at any time prior to 30 days "before the effective date of * * * retirement." "Retirement" is defined by N.J.S.A. 43:16A-1 as "termination of the member's active service with a retirement allowance granted and paid under the provisions of this act." Therefore, in the context of a deferred retirement allowance, the effective date of retirement can be no earlier than the retirant's 55th birthday irrespective of how long before that date his actual service terminated. If he can make an election to withdraw contributions or to obtain a special retirement benefit at any time prior to the month before he reaches age 55 and no matter how much time has elapsed since the termination of his membership as defined by N.J.S.A. 43:16A-3(3), we see no reason why he cannot also elect to receive a deferred retirement allowance beyond the time of actual membership, and indeed we are satisfied that the statute assumes that that election remains available to him until retirement age. In that respect, we regard as indicative of legislative intent the stipulation of N.J.S.A. 43:16A-11.2 that

*349 if such inactive member shall die after attaining age 55 but before filing an application for retirement benefits pursuant to this section or section 16 of P.L. 1964, c. 241 and has not withdrawn his aggregate contributions, or in the event of death after retirement, an amount equal to one-half of the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service shall be paid to such member's beneficiary.
The significance of this provision is the recognition that a person entitled to benefits might have reached the age of 55 without yet having exercised any of the three options available under the statute, namely, withdrawal of aggregate contributions, filing of an application for special retirement, or filing of an application for deferred retirement. The implication is that he could have exercised any of the options at any time prior to his death and certainly at any time prior to having reached age 55. Moreover, a person not having yet made an election and not yet eligible to receive benefits is referred to by the statute as "an inactive member," a usage which we are able to find in no other pension provision. It appears clear to us that "inactive member" as referred to in N.J.S.A. 43:16A-11.2 defines a category of persons beyond the contemplation of N.J.S.A. 43:16A-3(3). That category consists of persons under the age of 55 whose service has terminated after 10 or more years of creditable service, who are therefore entitled to a deferred retirement allowance. We are satisfied that that category of inactive members embraces all such persons who have not withdrawn their aggregate contributions, irrespective of the time lapse between separation from service and the date upon which receipt of pension benefits would commence. We are also persuaded that any such inactive member may apply for a deferred retirement allowance at any time.
Our interpretation of N.J.S.A. 43:16A-11.2 is supported by other considerations as well. First, it comports with the promulgated administrative regulations governing the Police and Firemen's Retirement System. N.J.A.C. 17:4-6.2(b) specifically provides that, except in the event of deferred retirement, a member may request a change in his retirement application at *350 any time before the retirement allowance becomes due and payable, said change requiring the approval of the board. N.J.A.C. 17:4-6.2(e), applicable only to deferred retirements, does not use the word "member" but rather the term "applicant" and requires amendment of a retirement application within one month prior to the effective date of retirement. We are satisfied that if an amended application may be filed within that time an initial application may also be so filed provided only that no prior dispositive election has been made.
Furthermore, while we recognize the necessity of protecting the financial integrity of pension systems, we do not perceive any prejudice to its financial integrity which PFRS would sustain by reason of permitting the election to be made at any time prior to reaching retirement age provided, of course, that the aggregate contributions have not yet been withdrawn. We also point out that where the Legislature has intended to place a time limitation on an application for statutory pension benefits, it has done so clearly and unequivocally. See, e.g., N.J.S.A. 43:16A-7 (accidental disability allowance must be applied for within 5 years of the original traumatic event, unless the 5-year period is waived by PFRS pursuant to statutory standards). Nor, as a matter of judicial construction, have we heretofore permitted a specifically granted pension right to be defeated by a narrow interpretation of the membership definition set forth in N.J.S.A. 43:16A-3(3). See Smith v. Consolidated, supra. Finally, our review of the other major pension acts, the Public Employees' Retirement System, N.J.S.A. 43:15A-1, et seq., and the Teachers' Pension and Annuity Fund, N.J.S.A. 18A:66-1, et seq., demonstrates entirely consistent schemes. Indeed, the Public Employees' Retirement provision, analogous to N.J.S.A. 43:16A-11.2, specifically refers to the deferred retirement allowance as a vested right. See N.J.S.A. 43:15A-38.
We are constrained to make a final observation regarding PFRS' administration of the system in respect of deferred *351 retirement allowances. The PFRS supervisor who testified at the hearing below made clear that the same Member's Expiration Notice heretofore referred to is sent to all persons separated from service irrespective of their ultimate qualification for a deferred retirement allowance. Whether or not they are so eligible, the only application form sent with the notice is an application for withdrawal of contributions. No application for a deferred retirement allowance is included. We also note that although there is a statement on the face of the notice that its recipient must give immediate notification if he wishes to apply for a specific retirement benefit, there is no notice that failure to do so within the two-year period will constitute an absolute bar to ultimate receipt of benefits. Moreover, although four different retirement possibilities are specified on the reverse side of the notice, it is only the deferred retirement which is, even in the view of PFRS, subject to forfeiture as a result of failure of what it regarded as timely notice.
We do not regard these documents as constituting fair dealing with members of the system. They are clearly intended to encourage exercise of the withdrawal option and consequent termination of any further pension opportunity and continued insurance benefits. They are not calculated to assist the member in preserving his deferred retirement rights if that is what he wishes to do. If PFRS construed N.J.S.A. 43:16A-11.2 as barring an application for the deferred retirement allowance if not made within two years after separation from service, it should have so stated in the notice clearly and unequivocally. The notice was, at best, ambiguous. We do not think it behooves the system to act antagonistically to the best interests of its members.
We reverse and remand to PFRS with the direction that it accept petitioner's application for a deferred retirement allowance and process it on its merits.
*352 BOTTER, P.J.A.D., concurring.
I concur in the result reached for reasons that I will state briefly. It is not unreasonable for respondent to interpret N.J.S.A. 43:16A-11.2 and N.J.S.A. 43:16A-3(3) to mean that a member must elect to receive a deferred retirement allowance to which he is entitled before his membership in the Police and Firemen's Retirement System (PFRS) expires. The right to elect retirement benefits is a right of membership in the system. Therefore it would not be unreasonable to require a member to make such an election when he leaves service or within two years after leaving service while his membership in the system continues pursuant to N.J.S.A. 43:16A-3(3). One should not be able to postpone such an election for some years until age 55 approaches and then make the election based upon one's actual health experience near age 55.
However, under the statute and regulations applicable to a deferred pension, a member who makes a prompt election to take a deferred pension and does not withdraw his pension contributions can later decide, before age 55, to give up his deferred pension and withdraw his contributions. N.J.S.A. 43:16A-11.2 expressly provides that a member who has elected a deferred retirement allowance can, within 30 days before the effective date of his retirement, elect to receive his aggregate contributions pursuant to N.J.S.A. 43:16A-11. Thus, for all practical purposes, every member of PFRS who leaves service and does not withdraw his contributions should be given the protection of a presumption that he elects the greater benefits of a deferred retirement allowance until he applies for the return of his contributions. If he dies before age 55 or after retirement, the benefit provided under N.J.S.A. 43:16A-11.2 shall be paid to his beneficiary.
For this reason, until the statutes are amended to make the Legislature's intent clear, I would give appellant the benefit of a presumed election of a deferred pension until he elects to withdraw the aggregate contributions. Despite the election of *353 a deferred pension, the statute and regulations allow for a change in election of benefits so as to permit the withdrawal of pension contributions before retirement benefits commence. The presumption of an election to take a deferred pension produces the same result.
For these reasons I would reverse respondent's decision and grant appellant deferred retirement benefits.