235 N.J. Super. 356 (1988)
562 A.2d 799
ELIZABETH R. STEINMANN, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1987.
Decided January 15, 1988.
*357 Before Judges O'BRIEN, HAVEY and STERN.
Samuel J. Halpern argued the cause for appellant (Samuel J. Halpern on the brief).
Roseann A. Finn, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Roseann Finn on the brief).
PER CURIAM.
Petitioner Elizabeth R. Steinmann appeals from a final determination of the New Jersey Teachers' Pension and Annuity Fund (TPAF) denying her request to convert her ordinary disability retirement plan to an early service retirement. On appeal she contends that TPAF's failure to render its final determination within 45 days of the ALJ's initial decision, which recommended approval of petitioner's request, made the ALJ's recommendation a final decision pursuant to N.J.S.A. 52:14B-10(c). In the alternative, she argues that TPAF's denial of her request to convert was arbitrary, capricious and unreasonable. We reject both contentions and now affirm.
Petitioner enrolled in TPAF when she began her teaching career on September 1, 1957. Her membership continued until retirment in March 1983. Petitioner sustained work-connected injuries in April 1981 and filed a petition for workers' compensation benefits. On January 31, 1983 she applied to TPAF for accidental disability retirement. Prior to filing the application, petitioner received a "benefits" booklet from TPAF which described eligibility requirements for accidental disability retirement as well as ordinary disability retirement. It also described eligibility requirements for early retirement benefits, *358 including entitlement to full benefits upon 25 years of service, regardless of age. The book also explained that if the retiree:
... is receiving periodic benefits under Workmen's Compensation, the actuarial equivalent of such benefits remaining to be paid will reduce the pension portion of his allowance.[1]
On petitioner's application for accidental disability benefits she was asked whether she had filed for workers' compensation benefits, and if so, what benefits she was then receiving. The application also noted:
... see benefit booklet for [workers' compensation benefits] effect on retirement allowance.
Petitioner disclosed on the application that she had filed a compensation claim and was receiving $58 temporary benefits weekly.
On December 19, 1983, petitioner's application for accidental disability retirement was denied. However, pursuant to N.J.S.A. 18A:66-39b, TPAF granted her ordinary disability retirement benefits effective March 1, 1983. On February 7, 1984 the Division of Pensions advised petitioner of her option to change from an option 1 allowance which paid $800.72 monthly to a maximum allowance of $908.57. The notice also contained the following reminder:
Please note that if you are receiving any periodic Worker's Compensation payments after the effective date of your retirement, your retirement allowance could be subject to a reduction. You must advise this office if and when you receive any Worker's Compensation Benefits.
On February 18, 1984 petitioner elected the maximum allowance.
On July 10, 1984 petitioner recovered a workers' compensation award of partial permanent benefits totalling $44,775. She *359 thereupon notified TPAF of the award. On January 7, 1985 she wrote to TPAF with the following request:
It is my understanding that my ordinary disability pension is not subject to any offset. If I am not correct in this matter, please change my pension to years in service.
The Division of Pensions responded on September 25, 1985, advising petitioner that her monthly allowance was being reduced to $559.88 per month because of the workers' compensation set-off. She was also advised that she could not convert to an early retirement plan because TPAF had already approved the ordinary disability retirement.
On November 7, 1985 petitioner made formal application to TPAF for a conversion to a early retirement plan. Under that plan, petitioner would have received $752.93 monthly instead of the reduced amount of $559.88. TPAF denied the request, stating that once a retirement plan became effective, "the choice is irrevocable." Petitioner appealed.
In his initial decision of November 17, 1986, the ALJ recommended reversal, concluding that TPAF had not dealt fairly with petitioner in failing to apprise her of her right to take early retirement in lieu of ordinary disability when her accidental disability claim was denied. The judge concluded that petitioner had demonstrated the requisite good cause and reasonable diligence to permit reopening of the retirement plan and conversion to an early retirement plan.
TPAF's time period for the rendering of final decision was extended by the OAL until January 8, 1987. On that date TPAF rejected the ALJ's recommendations and denied petitioner's conversion request by a unanimous vote. On March 5, 1987 TPAF made its written findings. It concluded that petitioner knew at the time she accepted ordinary disability retirement that the benefits would be subject to a workers' compensation set-off, that she also then knew she was eligible for the early retirement plan. It also found that since petitioner's ordinary disability retirement was being granted under N.J.S.A. 18A:66-39 upon the denial of her accidental disability application, *360 it had no obligation to advise her of the early retirement plan option.
We reject petitioner's procedural argument that TPAF failed to render a decision within 45 days as mandated by N.J.S.A. 52:14B-10c. That provision states that the agency shall adopt, reject or modify the ALJ's recommendations no later than 45 days after receipt, and if the agency fails to do so, the ALJ's decision shall be deemed adopted as the final decision of the agency. Here, the OAL extended the time period for TPAF's decision until January 8, 1987, and on that date the board unanimously rejected the ALJ's recommendation. N.J.S.A. 52:14B-10d requires that "[a] final decision or order adverse to a party in a contested case shall be in writing or stated in the record." TPAF's decision was "stated in the record" on January 8, 1987, within the time period as extended by the OAL. While it is true that for a decision to become effective, N.J.S.A. 52:14B-10(e) requires that it be delivered or mailed to the parties, the provision contains no explicit time constraint. See Belleville v. Coppla, 187 N.J. Super. 147, 152 (App.Div. 1982). TPAF's written findings were prepared on March 5, 1987 and sent to petitioner's attorney on March 6, 1987. We are entirely satisfied that the findings supporting the decision were made within a reasonable period of time after TPAF made its decision. See id. Further, there is absolutely no showing that petitioner was in any way prejudiced by the two-month delay. In the circumstances, we see no basis to invalidate its action on this procedural ground.
We also reject petitioner's contention that TPAF's rejection of her conversion request was arbitrary, capricious and unreasonable. We are sensitive to the fact that petitioner has contributed to TPAF as a participating member for 25 years and are sympathetic to her efforts in securing the most advantageous retirement plan available. Indeed, if we were establishing regulations de novo, we might conclude that retirement *361 plans could be reopened at any time to provide the maximum benefits available to retirees.
However, our role in reviewing an agency's decision is narrowly circumscribed. Ordinarily, we will reverse the decision only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973). Moreover, we are not at liberty to substitute our judgment for that of the administrative agency, see Dougherty v. Human Services Dep't., 91 N.J. 1, 6 (1982), and we must be mindful that a presumption of reasonableness attaches to the agency's action. Gerba v. Public Employees' Retirem. Sys. Trustees, 83 N.J. 174, 189 (1980); Boyle v. Riti, 175 N.J. Super. 158, 166 (App.Div. 1980). Further, although we consider the ALJ's initial decision as part of the record, it is TPAF that "is the primary factfinder" and it is TPAF's decision that we review. Public Advocate Dep't v. Public Utilities Bd., 189 N.J. Super. 491, 507 (App.Div. 1983); see also Hiering v. Board of Trustees of Public Employees, 197 N.J. Super. 14, 19 (App. Div. 1984).
Applying the appropriate standard of review, we conclude that there is no basis to disturb TPAF's determination. We have found no statutory or regulatory authority to permit the reopening of a retirement plan once it becomes due and payable. A member is entitled to change an application for retirement at any time before his retirement allowance becomes due and payable; thereafter the retirement shall stand as approved by the board. See N.J.A.C. 17:3-6.2(a). A member's retirement allowance becomes "due and payable" 30 days after the board's approval of the application. N.J.A.C. 17:3-6.3(a). Petitioner's final retirement selection of the maximum benefits was approved as of March 1, 1984 and thus became "due and payable" on April 1, 1984. Therefore, her ordinary disability retirement plan became fixed on that date. Implicit in TPAF's *362 determination is a respect for the finality of a retirement plan as found in the regulatory scheme and a proper consideration of the essential need to protect the financial integrity of the pension system from unanticipated conversions at added cost to the fund. See Fiola v. N.J. Treas. Dept., 193 N.J. Super. 340 (App.Div. 1984).
Notwithstanding the absence of authority in the statute or regulations to reopen, our Supreme Court in Duvin v. State, 76 N.J. 203 (1978), held that an administrative body has the inherent power, in the absence of legislative restriction, to reopen or modify orders previously entered. However, that power must be exercised reasonably and invoked only for good cause shown, and only where the applicant acted with reasonable diligence. Id. at 207 Duvin involved a public employee's request to PERS to convert an early retirement allowance to an accidental disability retirement. The court remanded to PERS for a "good-cause" hearing as to the employee's application. Id. at 208.
Applying Duvin to the facts before us, we are satisfied that petitioner failed to demonstrate "good cause." Citing Fiola v. N.J. Treas. Dept., supra, 193 N.J. Super. 340, petitioner argues that TPAF's failure to advise her of the availability of early retirement and that ordinary disability benefits would be off-set by compensation payments when her application for accidental disability benefits was denied constitutes "unfair dealing" and thus "good cause" under Duvin to reopen and convert to early retirement.
In our view, keeping in mind our narrowly circumscribed scope of review, there is no basis for petitioner's claim of "unfair dealing." The sole purpose of TPAF's December 19, 1983 letter was to advise petitioner of the denial of her application for accidental disability benefits, and the granting of ordinary disability benefits. It focused entirely upon petitioner's disability application made pursuant to N.J.S.A. 18A:66-39 and thus had no reason to address early retirement eligibility *363 under N.J.S.A. 18A:66-37. Contrary to petitioner's claim, TPAF had no "long-standing practice" of advising employees of their right to convert to early retirement when their accidental disability claim is denied. TPAF's policy is to offer members who file for a particular retirement plan a better benefit if the member qualifies. Here, the alternative plan paying the highest benefit to petitioner when her accidental benefit claim was denied was the ordinary disability plan.
There is ample evidence to support TPAF's findings that petitioner knew at the time her accidental disability claim was denied that she knew of her entitlement to early retirement benefits, and further that ordinary disability benefits would be off-set by workers' compensation payments. Petitioner had TPAF's "benefit booklet," which described eligibility for early retirement, before she applied for accidental benefits. She therefore knew, or should have known, of her eligibility for early retirement prior to the time her disability plan became fixed, but elected not to apply for those benefits.
Further, the booklet, her application for accidental disability benefits, and TPAF's letter of February 7, 1984 advising petitioner of the ordinary disability options, all referred to the effect a workers' compensation award could have on her disability retirement allowance. Thus, petitioner was placed squarely on notice that her election of a disability retirement program may be effected by the consequences of her workers' compensation case. Petitioner was represented by counsel both during her appeal from the denial of her accidental disability claim and in her workers' compensation case. There is no question that, as of the date petitioner's accidental disability claim was denied, the status of the law was that all public employee disability pensions, including teachers' disability pensions, were subject to the workers' compensation set-off, and that age and service pensions were not. See N.J.S.A. 18A:66-32.1; N.J.S.A. 34:15-43; Starkey v. Treasury Dep't, Pensions Div., supra, 183 N.J. Super. at 4-5. Both counsel could have advised petitioner that her ordinary disability retirement plan was subject to a *364 workers' compensation set-off as a matter of law. It was therefore not "unfair" for TPAF to assume that petitioner would know of the off-set without so advising her.
Moreover, while TPAF knew when it denied petitioner's accidental disability claim that she had a pending workers' compensation claim, it had no way to evaluate what compensation award, if any, would ultimately be entered. Petitioner and her counsel were clearly in the best position to predict the probable quantum of a set-off the compensation award would have on petitioner's disability benefits. Thus, petitioner and not TPAF, was best able to choose the most beneficial retirement program after consideration of the potential consequence of a workers' compensation set-off.
Our dissenting colleague, in asserting that TPAF's findings are not supportable, focuses on segments of petitioner's testimony before the ALJ which are essentially self-serving. What the dissent ignores is that we must review the "proofs as a whole" in the record before TPAF to determine whether the agency's decision is supportable. Mayflower Securities v. Bureau of Securities, supra, 64 N.J. at 93. Although petitioner testified she did not know her ordinary disability benefits would be off-set by compensation payments, the benefits booklet, disability application and the February 7, 1984 letter from TPAF regarding the ordinary disability benefit options, all reminded her that the disability allowance could be subject to a reduction. TPAF could conclude from this evidence, as well as the fact that petitioner was represented by counsel in both her disability claim appeal and compensation case, that she knew her ordinary disability benefits were subject to reduction as a matter of law, despite her testimony to the contrary. Indeed, it may well be that petitioner and counsel were of the view at the time petitioner accepted the ordinary disability plan, that the compensation claim, not yet resolved, would not reduce the ordinary disability benefits below what petitioner would receive under early retirement, and thus chose the latter. The point is that the ALJ's acceptance of petitioner's testimony as being *365 credible is not dispositive; so long as sufficient credible evidence on the record as a whole supports the agency's factfinding, we must give deference to it.
As we have stated, the only issue before us is whether or not there was such "good cause shown" under Duvin, supra, 76 N.J. at 207, to reopen petitioner's retirement plan; that is, whether TPAF acted "fairly" in not advising petitioner at the time her application for accidental disability was denied that she had an option to seek early retirement instead of ordinary disability benefits. The dissent's conclusion that there was no fair dealing here is predicated solely on its "fact-finding" that petitioner did not know ordinary disability benefits would be off-set by compensation payments. By making such a finding, the dissent undercuts the agency's independent fact-finding role and ignores our scope of review. We conclude that TPAF's fact-finding and its implied determination that it did not deal unfairly with petitioner, are supportable on the record.
Fiola v. N.J. Treas. Dept., supra, 193 N.J. Super. 340, on which petitioner relies, is distinguishable. Fiola was a firefighter who resigned his membership in the Police and Firemens' Retirement System. Upon his resignation, PFRS notified him that he was eligible to apply for the withdrawal of his contribution to the fund. While the notification also contained a list of various retirement possibilities, no application form was included with the notice other than that pertaining to the withdrawal of contributions. When Fiola applied approximately five years later for a deferred net allowance, PFRS denied the request because more than two years had elapsed after his last payment into the fund. See N.J.S.A. 43:16A-3(3). We reversed, noting that the denial was tantamount to a "[f]orfeiture of earned pension rights, ..." a "... drastic penalty which the New Jersey Supreme Court has become increasingly loath to permit[.]" Id. at 347-348. In dictum, we further noted that in sending only an application for withdrawal of contributions, PFRS dealt unfairly with Fiola since the notice "clearly intended to encourage exercise of the withdrawal option and consequent *366 termination of any further pension opportunity...." Id. at 351.
Here, there is no "consequent termination of any further pension opportunity...." Indeed, petitioner obtained the highest paying benefit available to her at the time her accidental disability application was denied. Further, TPAF's dealings with petitioner were never calculated to mislead petitioner into forfeiting other options more beneficial to her. To the contrary, we are convinced that TPAF acted in good faith in processing petitioner's disability application and that it had no obligation, in the circumstances here present, to advise petitioner of her eligibility for early retirement benefits. We therefore conclude that petitioner has not demonstrated the requisite "good cause" to reopen the ordinary disability plan and to convert to early retirement.
Affirmed.
O'BRIEN, J.A.D., dissenting.
Although I join in my colleagues' rejection of petitioner's procedural argument that the New Jersey Teachers' Pension and Annuity Fund (TPAF) failed to render a decision within 45 days as mandated by N.J.S.A. 52:14B-10c, I respectfully dissent from the balance of the opinion. I would reverse the final decision of TPAF and remand with directions substantially for the reasons set forth in the initial decision of the administrative law judge (ALJ). I agree with his conclusions that TPAF did not deal fairly with petitioner and that petitioner demonstrated good cause and acted with reasonable diligence within the two-prong test of Duvin v. State, 76 N.J. 203, 207 (1978).
I recognize that on this appeal we review the decision of the agency which is not bound by the findings of fact made by the ALJ. See Public Advocate Dept. v. Public Utilities Bd., 189 N.J. Super. 491, 507 (App.Div. 1983). However, N.J.S.A. 52:14F-1 et seq. was in part enacted to address the potential conflict of interest where a hearing officer who determined the *367 outcome of a contested administrative matter was a part of the agency with whom the dispute was pending. We addressed this conflict in N.J. State Bd. of Optometrists v. Nemitz, 21 N.J. Super. 18, 36-37 (App.Div. 1952). As the Supreme Court observed in City of Hackensack v. Winner, 82 N.J. 1, 37 (1980),
The administrative law judges will be independent of the administrative agency whose jurisdiction is involved.... It is anticipated that the findings and recommended dispositions of the ALJs will carry substantial weight in the final determination to be made by administrative agencies.
Our review of the agency's determination remains
... whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering `the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge their credibility * * * and * * * with due regard also to the agency's expertise where such expertise is a pertinent factor. [Citation omitted.] [Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973)]
When an agency decision reverses the conclusion of the ALJ, the factual findings of the ALJ may be considered by us in determining whether the agency's decision is based upon sufficient credible evidence. See Hiering v. Bd. of Trustees of Public Employees, 197 N.J. Super. 14, 19 (App.Div. 1984); State, Dept. of Health v. Tegnazian, 194 N.J. Super. 435, 449-450 (App.Div. 1984); In re Suspension of License of Silberman, 169 N.J. Super. 243, 255-256 (App.Div. 1979), aff'd o.b. 84 N.J. 303 (1980).
In its findings of fact made pursuant to N.J.S.A. 52:14B-10(d), TPAF found:
... that petitioner knew at the time she accepted ordinary disability retirement benefits that such benefits would be subject to reduction upon her receipt of worker's compensation benefits. This finding is supported by petitioner's subsequent correspondence in July 1984 to the Board wherein she advised that she was in receipt of a worker's compensation award. The Board finds as fact that had petitioner believed that ordinary disability benefits were not offset by a worker's compensation award, she would not have communicated with respondent about the award.
The only witness to testify was petitioner, about whom the ALJ said:
I found petitioner to be a credible witness and I accept her testimony that she would have taken the early retirement had she been advised that her early *368 retirement benefit would have been $752.93 as opposed to $908.57 under ordinary disability retirement less some reduction.
In her testimony petitioner explained this when she said:
I would have taken the early retirement because I would have known where I am financially. I would have had that chance to make a decision and not to worry and to wonder and to become all upset. I would have been able to go on and not live under a financial cloud.
Petitioner testified that she knew workers' compensation benefits would be an offset against the award for accidental disability benefits for which she had applied, but that she did not know they would be offset against the ordinary disability benefits which she was awarded. The ALJ specifically questioned petitioner about this:
THE COURT: Your thinking was the offset would only be with respect to accidental and not ordinary disability?
THE WITNESS: That is correct.
Notwithstanding this testimony, which the fact-finder found to be credible, TPAF made a finding of fact to the contrary. As we said in State, Dept. of Health v. Tegnazian, supra, 194 N.J. Super. at 450:
While the commissioner is not legally bound to follow the ALJ's recommendations, he may not brush them aside. Indeed, his failure to deal with them in his decision so as to satisfy a reviewing court that they have been seriously studied may spell the difference between agency action which is or is not found to be supported by substantial credible evidence in the record. This is particularly true where factual issues are the focus of attention and questions as to the weight and credibility of evidence must be treated.
TPAF considered its finding "supported by petitioner's subsequent correspondence in July 1984 to the Board wherein she advised that she was in receipt of a workers' compensation award." Petitioner testified this notice was given to TPAF pursuant to its letter of February 7, 1984, explaining her benefits, which included the statement:
Please note that if you are receiving any periodic Worker's Compensation payments after the effective date of your retirement, your retirement allowance could be subject to a reduction. You must advise this office if and when you receive any Worker's Compensation Benefits. [Emphasis supplied.]
Contrary to the findings of TPAF, petitioner's follow-up letter of January 7, 1985 specifically states:

*369 It is my understanding, that my ordinary disability pension is not subject to any offset. If I am not correct in this matter, please change my pension to years in service.
This letter was not answered until September 25, 1985, when TPAF simply advised, "We cannot change this decision." As suggested in that letter, petitioner wrote to Anthony Ferrazza, Board Secretary, by letter dated November 7, 1985, to which Mr. Ferrazza, on behalf of TPAF, responded on January 21, 1986 stating:
It was the Board's decision and determination to deny your request. The Board determined that once a retirement has become effective, no change in the type of retirement or payment to be received is possible. The choice is irrevocable (N.J.S.A. 18A:66-47, 58.1). The Board, therefore, declared that you will be continued on retirement under the Ordinary Disability provision of the retirement system. [Emphasis supplied.]
This is untrue. TPAF does have power to reopen pension proceedings after a pension has been granted. See Duvin v. State, supra, 76 N.J. at 207. The statutory authority cited by TPAF does not support its incorrect statement. N.J.S.A. 18A:66-47 deals with options which a retired member may select and is concerned with rights that may survive the death of the retired member. N.J.S.A. 18A:66-58.1 deals with fixing annuity values without reference to sex.
TPAF also placed some significance upon its finding that petitioner knew she had over 25 years of service which, of course, is a statement of the obvious. Her knowledge of that fact, however, was not the issue. At issue was whether or not petitioner knew her ordinary disability pension was subject to actuarial reduction based upon a workers' compensation award, and an early retirement was not subject to such reduction.[1]
As we stated in Fiola v. N.J. Treas. Dept., 193 N.J. Super. 340, 347 (App.Div. 1984):
It is virtually axiomatic that statutory pension provisions are to be liberally construed in favor of public employees and that pensions represent not merely *370 the gratuity of a benevolent governmental employer but rather that they constitute deferred compensation earned by the employee during his years of service. See Masse v. Public Employees Retirem. Sys., 87 N.J. 252, 259-261 (1981); Uricoli v. Police & Fire Retirem. Sys., 91 N.J. 62, 70-73 (1982). Forfeiture of earned pension rights, therefore, constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loathe to permit even in the case of employee misconduct unless that penalty has been clearly mandated by the Legislature. See, e.g., Masse v. Public Employees' Retirem. Sys., supra; Uricoli v. Police & Fire Retirem. Sys., supra; Eyers v. Public Employees Retirem. Sys., 91 N.J. 51 (1982).
I conclude that the findings of TPAF are not supported by substantial, credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980).
The majority's conclusion that petitioner is not forfeiting any of her pension benefits is incorrect. Her ordinary disability retirement has been reduced to an amount which is less than petitioner was entitled to after over 25 years of service in an early retirement pension, pursuant to N.J.S.A. 18A:66-37.[2]
The workers' compensation award was for permanent disability resulting from job-related injuries. Since the accidental disability allowance sought by petitioner under N.J.S.A. 18A:66-39c was also based upon her permanent disability from those injuries, it is logical that it be reduced by the amount of the workers' compensation award. However, it is not logical that an ordinary disability under N.J.S.A. 18A:66-39b will be reduced by a workers' compensation award since the disability need not be "a direct result of a traumatic event occurring during and as a result of the performance of [her] regular or assigned duties" as required for accidental disability benefits under N.J.S.A. 18A:66-39c, nor even "by accident arising out of and in the course of employment" as required for an award of workers' compensation under N.J.S.A. 34:15-7. Moreover, early retirement after 25 years of creditable service pursuant to N.J.S.A. 18A:66-37 has nothing to do with injuries or disability, *371 only service. In my opinion, to the extent that her ordinary disability pension, as reduced, is less than the early retirement for service pension, she is forfeiting that portion of her service pension. I fail to see how the financial integrity of the pension system can be affected by an adjustment to award a member an early retirement pension based upon service to which she is clearly entitled. Refusal to do so represents a forfeiture by this member of $193.05 per month from the amount to which she is entitled by virtue of her service.
In my opinion, TPAF should have exercised its power to reopen petitioner's pension proceeding even after allowance of an ordinary disability pension. While that power should be invoked only for good cause, petitioner certainly has shown good cause and she acted with reasonable diligence within the reasoning of Duvin v. State, supra. Neither petitioner nor the board knew at the time she applied for her accidental disability pension, nor when she was awarded her ordinary disability pension, what the amount of her workers' compensation award for permanent disability would be. I agree with TPAF that it could not be held to predict the amount of that ultimate award, nor, conversely, could petitioner, notwithstanding that she was represented by counsel. The same information available to her attorney was available to TPAF, an expert in the field of pension and disability benefits. I see nothing sinister, as suggested by the majority, in petitioner or her attorney seeking the largest amount of pension to which she is legally entitled.
The conclusion by TPAF and the majority begs the question, because the issue is not predicting the ultimate quantum of the workers' compensation award, but rather the type of pension against which it would be offset. The board knew this, petitioner did not. The failure of TPAF to advise petitioner that the ultimate workers' compensation award would be offset against her ordinary disability pension, but not against her early retirement pension, led the ALJ to conclude that TPAF did not deal fairly with petitioner. I agree.
*372 It seems to me that when we review the findings of fact by an ALJ, who saw and heard the witness testify, as opposed to the findings of fact made by the administrative agency from a review of the record, particularly where the ALJ has found the agency did not act fairly, great weight should be placed upon the findings of fact by the ALJ. As noted by our Supreme Court in Hackensack v. Winner, supra, 82 N.J. at 37, it was anticipated that the findings and recommended dispositions of the ALJ would carry substantial weight in the final determination made by the administrative agency. This principle should have even greater application where the conclusion of the independent ALJ is that the agency did not act fairly. Obviously, a conclusion that it did not act fairly is difficult for the agency to accept and its refusal to do so is, in my opinion, suspect.
I would reverse and remand to TPAF to reopen petitioner's pension application and convert her pension from ordinary disability retirement to early retirement, making all necessary adjustments so that her early retirement pension be made retroactive to the time her ordinary disability pension began.
NOTES
[1] The booklet containing the workers' compensation set-off against all retirement plans, was published in 1973. In Starkey v. Treasury Dep't, Pensions Div., 183 N.J. Super. 1, 6 (App.Div.), certif. den. 91 N.J. 190 (1982), we held that while a disability retirement plan was subject to a workers' compensation set-off, a retirement plan based on age and service is not. See also State v. Garcia, 193 N.J. Super. 334 (App.Div. 1984).
[1] The "benefits" booklets supplied to petitioner by TPAF erroneously stated that all pensions could be subject to such a reduction. See pp. 357-58 in the majority opinion.
[2] Her ordinary disability benefit was $908.57 per month. When offset with the workers' compensation award it was reduced to $559.88. It was stipulated that her early retirement benefit would be $752.93 or $193.05 more.