709 A.2d 1344

MARK T. ENSSLIN, PETITIONER–APPELLANT, v. BOARD OF
TRUSTEES, POLICE AND FIREMEN'S RETIREMENT
SYSTEM, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1997—Decided May 11, 1998.

Before Judges MUIR, Jr., KESTIN and CUFF.

*Joseph Licata,* argued the cause for appellant (*Loccke & Correia,* attorneys; *Mr. Licata,* of counsel and on the brief).

*Susanne Culliton,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Culliton,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Petitioner appeals from a final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) denying his application for an ordinary disability retirement. We reverse.

Background facts relating to the matter are recited at length in a prior opinion, *Ensslin v. Township of North Bergen,* 275 *N.J.Super.* 352, 646 *A.*2d 452 (App.Div.1994) (*Ensslin I*). In that consolidated appeal, we affirmed the decision of the Merit System Board upholding petitioner's termination from service as a police officer, as modified to reflect a resignation in good standing. We also affirmed the dismissal of petitioner's Law Division action alleging handicap discrimination in violation of the Law Against Discrimination (LAD). The Supreme Court denied certification. 142 *N.J.* 446, 663 *A.*2d 1354 (1995).

On February 17, 1995, shortly after certification was denied, petitioner filed his application for an ordinary disability retirement. On May 17, the Board rejected the application on the ground that petitioner was ineligible because he was not "a member in service." The Board secretary advised petitioner that he was entitled to request formal review of the determination. On

June 28, 1995, petitioner sought formal reconsideration. The final decision denying the application followed on August 20, 1996.

The material facts are undisputed. Petitioner's last pension contribution as a member of PFRS was July 31, 1988, the effective date of his termination as a North Bergen police officer. More than four years later, on September 22, 1992, while petitioner's suits were still pending before the Merit System Board and the Law Division, the Division of Pensions and Benefits sent petitioner a letter advising that his membership account would expire if he did not return to public service by November 22, 1992. The letter was sent to an old address and never reached petitioner.

The Board denied petitioner's application for an ordinary disability retirement on the ground it was untimely. That determination was expressed as based on the interplay of two statutes which the Board characterized as clear and unambiguous. *N.J.S.A.* 43:16A–3(3) provides that membership in PFRS ceases, *inter alia*, "if more than 2 years have elapsed from the date of [the member's] last contributions to the system[.]" *N.J.S.A.* 43:16A–6(1) provides that an application for an ordinary disability retirement is to be made "by a member in service" or on his behalf. The Board held, as a matter of law, that petitioner did not meet these statutory requirements, and ruled that it was "without discretion or authority to deviate from the statutory mandate."

The gravamen of petitioner's joined claims in his prior actions was "that his disability, although preventing him from performing all of the functions of a police sergeant, did not prevent him from performing the essential functions of the job with reasonable accommodation." *Ensslin I, supra,* 275 *N.J.Super.* at 359, 646 *A.*2d 452. On that basis, he resisted North Bergen's effort to terminate his employment, and contended that, under the LAD and on other grounds, he was entitled to such reasonable accommodation as would enable him to continue functioning as a police officer with the rank of sergeant.

Petitioner's fundamental contention in asserting his claims before the Merit System Board and the Law Division, based upon

his rights under both the statutes and regulations governing public employment and the standards of the LAD, may be expressed in the language of *N.J.S.A.* 43:16A–6(1). He argued that he was not so "incapacitated for the performance of his usual duty and of any other available duty" as to be considered disabled, if reasonable accommodations were made. In applying for an ordinary disability retirement, petitioner would have been required to establish the contrary proposition, *i.e.*, that he was disabled and could not function in his position even with reasonable accommodation. The statutory standard provides, in full, that a member qualifies if:

> mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him and that such incapacity is likely to be permanent and to such an extent that he should be retired.

[<em>Ibid.</em>]

█ In order to be considered for an ordinary disability pension, petitioner was required to file a verified application containing his own "statement supporting [his] claim for disability retirement" which would satisfy the requirements of *N.J.S.A.* 43:16A–6(1). No extraordinary exercise of imagination is involved in envisioning that any such sworn statement, made before the employment action and civil suit were concluded, could have been used effectively to defeat petitioner's claims in those proceedings. Moreover, petitioner's claims in his litigation could have been used, as effectively, to negate the proposition he was required to establish in order to qualify for an ordinary disability pension. Clearly, therefore, while the central issue of fact and law in petitioner's termination proceeding and civil action remained in dispute—through the conclusion of the appellate process—he was effectively precluded from taking the contrapositive position in a pension application. *See, e.g., Division of Gaming Enforcement v. Gonzalez*, 142 *N.J.* 618, 632, 667 *A.*2d 684 (1995) ("[T]he doctrine of judicial estoppel ... 'bar(s) a party to a legal proceeding from arguing a position inconsistent with one previously asserted.'"). A result requiring petitioner to have forfeited the employment and

LAD claims he was actively pursuing in order to preserve his pension entitlement, before any decision was made in either connection, would negate both the liberality required in construing the public employee pension statutes, *see Uricoli v. Police and Firemen's Retirement Sys.,* 91 *N.J.* 62, 70–73, 449 *A.*2d 1267 (1982); *Masse v. Public Employees Retirement Sys.,* 87 *N.J.* 252, 259–61, 432 *A.*2d 1339 (1981), and the pensions systems' obligations to deal fairly with their members. *See Fiola v. New Jersey Treas. Dept.,* 193 *N.J.Super.* 340, 351, 474 *A.*2d 23 (App. Div.1984). *Cf. Galligan v. Westfield Centre Serv., Inc.,* 82 *N.J.* 188, 192–93, 412 *A.*2d 122 (1980) ("Unswerving, 'mechanistic' application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing ... legislative purposes. * * * On numerous occasions we have found 'such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice.' * * * A 'just accommodation' of individual justice and public policy requires that 'in each case the equitable claims of opposing parties must be identified, evaluated and weighed.' * * * Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim.") (citations omitted); *SMB Assocs. v. Department of Envtl. Prot.,* 264 *N.J.Super.* 38, 59, 624 *A.*2d 14 (App.Div.1993), *aff'd,* 137 *N.J.* 58, 644 *A.*2d 558 (1994) ("[A]n agency has inherent power to waive *de minimis* violations of objective standards."). Manifestly, had the issue of petitioner's substantive entitlement to an ordinary disability pension come before the Board while his litigation was pending, it would have been appropriate and fair for action on the pension application to have been deferred until common questions relating to petitioner's employment rights were resolved by adjudication.

■ Aside from considerations of fairness and equity, it is clear enough that the two-year standard of *N.J.S.A.* 43:16A–3(3) is not

jurisdictional, especially in the circumstances presented here. *See SMB Assocs., supra,* 264 *N.J.Super.* at 59, 624 *A.*2d 14; *Fiola, supra,* 193 *N.J.Super.* at 348, 351, 474 *A.*2d 23. If it were, the September 22, 1992 letter from the Division of Pensions and Benefits, more than four years from the date of petitioner's last contribution, advising him that his membership would expire sixty days thence if he did not return to public service before, would not have been possible. In this regard, we are guided by the agency's construction of its own statute in the day-to-day administration of its affairs. *See In re Union County Prosecutors,* 301 *N.J.Super.* 551, 561, 694 *A.*2d 289 (App.Div.1997); *Lally v. Public Employees' Ret. Sys.,* 246 *N.J.Super.* 270, 273, 587 *A.*2d 303 (App.Div.), *certif. denied,* 126 *N.J.* 332, 598 *A.*2d 890 (1991); *Szczepanik v. New Jersey Treas. Dept.,* 232 *N.J.Super.* 491, 504, 557 *A.*2d 705 (App. Div.1989).

We have, furthermore, been given no reason to apprehend that a determination favoring petitioner would in any way impair the fiscal integrity of the PFRS system or fund or stretch them beyond fair legislative design. *See Stevens v. Public Employees' Ret. Sys.,* 309 *N.J.Super.* 300, 303, 706 *A.*2d 1191 (App.Div.1998); *DiMaria v. Public Employees' Ret. Sys.,* 225 *N.J.Super.* 341, 354, 542 *A.*2d 498 (App.Div.), *certif. denied,* 113 *N.J.* 638, 552 *A.*2d 164 (1988); *Fiola, supra,* 193 *N.J.Super.* at 350, 474 *A.*2d 23. In the absence of any such likelihood, the Board's decision in this matter must be seen to have been unduly rigid. *See Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958) ("Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. * * * The purpose of the statute is not to be frustrated by an unduly narrow interpretation.") (citation omitted); *New Jersey Housing & Mtge. Fin. Agency v. Moses,* 215 *N.J.Super.* 318, 324, 521 *A.*2d 1307 (App.Div.), *certif. denied,* 107 *N.J.* 638, 527 *A.*2d 460 (1987).

Finally, we note that, in response to our inquiry at oral argument, counsel for the Board has advised that petitioner may

choose to apply the balance of his PFRS account to purchase credits in his current Public Employee's Retirement System account. This is an option available to petitioner if he elects to withdraw his application for an ordinary disability retirement from PFRS.

Reversed.