**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1316-21

VERONICA (STORLEY)
WILLIAMS,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Submitted April 8, 2024 – Decided April 18, 2024

Before Judges Marczyk and Chase.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx8650.

Alterman & Associates, LLC, attorneys for appellant (Stuart J. Alterman, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Robert E. Kelly, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Veronica (Storley) Williams appeals from a November 18, 2021 final determination by the Board of Trustees of the Public Employees' Retirement System ("PERS") denying her petition to reopen her expired account so that funds and service credit could be transferred to the Police and Firemen's Retirement System ("PFRS").  We affirm.

I.

Petitioner enrolled in PERS in 2002 in connection with her job as a secretary for the State.  In 2013, she resigned from her position to accept a new job as a Mercer County Corrections Officer, a role eligible for participation in PFRS.  She enrolled in the police academy but, due to an injury, did not graduate.  Instead, she joined a subsequent academy class and completed her training in November 2015.  While she remained an employee of the Mercer County Department of Corrections during this two-and-a-half-year period, holding a PFRS-eligible job title, she could not enroll in PFRS prior to completing her training.

Meanwhile, in August 2013, when initially attempting to enroll in PFRS, petitioner completed a Division of Pensions and Benefits ("Division") "Report of Transfer" form noting her existing PERS membership number.  Initially,

PERS issued petitioner a Certification of Payroll Deductions, acknowledging Mercer County as her new employer and notifying her that six back PERS deductions and twenty-two pension-loan-repayment deductions would begin in November 2013. However, because petitioner did not complete her training, the processing of her transfer was reversed before any PERS deductions were made by way of an inter-departmental memorandum. The memorandum noted as a full-time employee of Mercer County in a PFRS-eligible role, she could not remain a member of PERS.

In March 2015, the Division sent petitioner a letter stating the two-year anniversary of her last contribution to PERS—June 30, 2013—was imminent. The letter informed petitioner she was eligible to apply for a retirement benefit, having maintained her PERS membership for over ten years. The letter directed her to the "Expired Accounts" section of the Division's website for further information.

In November 2015, after petitioner completed her training, a Mercer County employee completed PFRS enrollment paperwork for petitioner. She faxed the PFRS enrollment department three pages: a cover sheet, a copy of the certification of petitioner's eligible appointments, and petitioner's June 2014 half-complete application for interfund transfer. PFRS confirmed receipt of

petitioner's enrollment via email, and PFRS payroll deductions began in December 2015.

In March 2016, PFRS informed Mercer County it could not complete the interfund transfer because petitioner's PERS account had expired on June 30, 2015. The Division later confirmed this, informing petitioner while she was not eligible for membership in either pension system from April 2013 to November 2015, she may be eligible to purchase service credit for those dates.

On January 14, 2020, the PFRS Board confirmed the Division's determination and again denied petitioner's application for interfund transfer as untimely. It reiterated its earlier suggestion for her to investigate options to withdraw the funds from her expired PERS account and purchase service credits. The matter was transferred to the Office of Administrative Law ("OAL") as a contested case. After a status conference, the case was placed on the inactive list pending petitioner's application to the PERS Board.

In June 2021, petitioner asked the PERS Board to reopen her account so that PFRS could consider accepting the funds. Among other things, she argued she received no notice of the expiration of her PERS account, and therefore no notice the interfund transfer was not possible until it was too late to remedy the situation. She appealed to the PERS Board's power to fashion an equitable

remedy in her favor. On September 13, 2021, the PERS Board denied petitioner's request to reopen her account. Petitioner requested the matter be transferred to the OAL as a contested matter.

On November 18, 2021, after declining to transfer the matter to the OAL because there was "no genuine issue of material fact in dispute," the PERS Board issued its final determination, confirming its denial of petitioner's request to reactivate her expired PERS account. The PERS Board found the August 2013 Report of Transfer and the Certification of Payroll Deductions slated to begin November 2013 were processed in error and then reversed because employees cannot contribute to PERS when they hold permanent PFRS-eligible positions. The PERS Board also found petitioner received communications about her pension both in August and October of 2014, and requested an audit of her account in December 2014 "due to her interest in purchasing missing time." It also highlighted the March 2015 letter directing her to the "Expired Accounts" area of the Division's website, as well as a June 2015 letter directing her to submit a purchase application for the service credits. Applying the law to these facts, the PERS Board concluded that by operation of N.J.S.A. 43:15A-7(e), petitioner's PERS membership account expired on June 30, 2015. As to petitioner's charges of inadequate notice, the PERS Board stated the information

was "not only codified by statute," but "widely available on the Division's web site."

This appeal followed.

II.

We begin by acknowledging judicial review of an agency's final determination is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27). This standard "is generally understood to involve inquiry into whether the decision conforms with relevant law, whether there is substantial credible evidence in the record as a whole to support the agency's decision, and whether in applying the relevant law to the facts, the agency clearly erred in reaching its conclusion." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 280 (2018) (citing In re Carter, 191 N.J. 474, 482-83 (2007)).

"[A]n enhanced deferential standard" applies to agency decisions related to the enforcement of a statutory scheme. East Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015)). This deference specifically applies to the agencies administering public pensions because of the "experience and specialized knowledge" required in "administering and regulating a legislative enactment within its field of expertise." Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 55 (App. Div. 2019) (quoting Piatt v. Police & Fireman's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

III.

A.

The law applicable to this case is derived from the statutes governing PERS and PFRS, regulations governing the transfer of funds from one pension system to another, and case law construing the same.

N.J.S.A. 43:15A-1 to -161 provides the statutory scheme governing PERS. The provision for eligibility states, in pertinent part, "[m]embership of any person in the retirement system shall cease if he shall discontinue his service for more than two consecutive years." N.J.S.A. 43:15A-7(e). Similarly, a provision governing disbursement of accumulated deductions to withdrawn members

7

provides a member "shall cease to be a member two years from the date [the member] discontinued service as an eligible employee, or, if prior thereto, upon payment to [the member] of [the member's] accumulated deductions."  N.J.S.A. 43:15A-41(a).

N.J.S.A. 43:16A-1 to -68 governs PFRS.  The provision for transfer of credit from another public pension system states:

> A member <u>who is a member of another State-administered retirement system or pension fund at the time of enrollment in [ ] [PFRS]</u> and does not contribute to the other system or fund after that time may transfer the service credit in the other system or fund to [ ] [PFRS] upon application and transfer of the member's contributions from the other system or fund to the system.  If the member has withdrawn the contributions to the other retirement system or pension fund, the member may purchase credit for the service in the other system or fund.
>
> [N.J.S.A. 43:16A-11.6 (emphasis added).]

The administrative code regulating PFRS states employees appointed to a PFRS-eligible position "shall be considered for PFRS enrollment upon successful completion of the police or firefighting training."  N.J.A.C. 17:4-2.6(a).  Enrollment is not permitted "until the employer certifies that the employees have successfully completed the police or firefighting training."  N.J.A.C. 17:4-2.6(d).

The regulatory provision for interfund transfers between systems prohibits the transfer of credit from a former system into a new system where "[t]he account is inactive; that is, it has been more than two years from the date of the last contribution nor has the member's account remained active due to the provisions of N.J.S.A. 43:15A-8." N.J.A.C. 17:2-7.1(b)(5)(iii).

It is a long-standing proposition that pension statutes "should be liberally construed and administered in favor of the persons intended to be benefited thereby." Geller v. Dep't of Treasury, 53 N.J. 591, 597-98 (1969). However, this liberality is to be applied when the employee is eligible for benefits, "but eligibility is not to be liberally permitted." Smith v. Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). Rather, in determining eligibility, "applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (alteration in original) (quoting Chaleff v. Tchrs.' Pension & Annuity Fund Trs., 188 N.J. Super. 194, 197 (App. Div. 1983)).

Application of these statutory schemes and regulations to the uncontested facts plainly supports the Board's decision. N.J.S.A. 43:15A-7(e) clearly marks the end of petitioner's PERS membership on June 30, 2015, two years from the

date of her last contribution. N.J.A.C. 17:4-2.6(a) clearly marks her eligibility for PFRS enrollment in November 2015 when she completed her training and Mercer County certified that completion. N.J.S.A. 43:16A-11.6 permits transfer of funds into PFRS for those who are members of another system at the time of enrollment. By the time petitioner enrolled in PFRS and submitted her application for interfund transfer, the regulations governing interfund transfer prohibited the transfer because her PERS account was made inactive two years after her last contribution, and she was no longer a PERS member.

The PERS Board's decision was a statutorily mandated outcome, because when petitioner submitted her first transfer application, which was initially processed but subsequently reversed, she was not a member of another pension system into which her PERS account could have been transferred. Therefore, "the persons intended to be benefited" by a liberal construction of these statutes and regulations did not include petitioner, who was no longer a member at the time of her untimely application. The agency's decision conformed with the law and was supported by the evidence in the record. It was not arbitrary, capricious, or unreasonable.

B.

Petitioner next argues she did not have adequate notice that her PERS account was going to expire. She argues the March 11, 2015 letter provided far less information than the communication at issue in Fiola v. State Department of Treasury, Division of Pensions, 193 N.J. Super. 340 (App. Div. 1984), which we found failed to apprise a petitioner of a two-year deadline to apply for a deferred retirement allowance.

The PERS Board acknowledges the "Report of Transfer" form was initially processed, but because she did not complete the academy, it was cancelled. Petitioner's pay never reflected deductions for pension contributions. The PERS Board notes in December 2014, petitioner characterized her transfer request as "pending," which evidenced her knowledge the transfer had, in fact, not taken place. The PERS Board also pointed to the March 11, 2015 letter as notice that her account would be expiring.

Adequate notice "is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Our Supreme Court has held, "[t]o be reasonable, an agency's choice of action for providing notice does

11

not require adoption of a perfect practice. But . . . the means of notice in fulfillment of [the agency's] statutory policy similarly must be designed to reasonably achieve its intended purpose." Yucht, 233 N.J. at 282.

In Fiola, we considered an application to PFRS made more than seven years after a retiree left service and elected a deferred retirement allowance. 193 N.J. Super. at 343. The PFRS Board denied the application, interpreting the membership provision, deactivating a retiree's account two years after the date of the last contribution, to bar the retiree from making any election after the expiration other than the return of the aggregate contributions. Id. at 347. Because the deferred retirement allowance statute contained no such mandate that the application be made within two years of the last contribution, we reversed and held any inactive member could apply for deferred retirement allowance at any time. Id. at 349. While this statutory interpretation was the basis for reversal of the PFRS Board's conclusion, we did comment in passing that the forms sent to Fiola, which urged him to exercise a withdrawal option, were not sufficient notice of the purported two-year deadline, as they did not include any information on the deferred retirement allowance he sought to elect. Id. at 352.

No contradictory or incomplete communications akin to those implicated in Fiola are present in this record. Petitioner has presented no communication from the PERS Board communicating any timeframe other than the two-year timeline described in N.J.S.A. 43:15A-7(e) and N.J.S.A. 43:15A-41(a). The Division's March 11, 2015 letter explicitly informed her the two-year anniversary of her last PERS contribution was imminent and directed her to find more information in the "Expired Accounts" portion of the Division's website. In view of the statutory and regulatory provisions that govern PERS membership, all members have constructive notice that an account expires two years after the date of the last contribution. The expiration provision also would have been available to petitioner through her PERS Member Handbook. Moreover, petitioner would have been on notice that her transfer was not affected when her paychecks from June 2013 to November 2015 did not reflect deductions for contributions to either pension system.

To the extent petitioner also contests as deficient any notice of the reversal of her transfer application by the November 2013 memo, it is PFRS, not PERS, that processed and then reversed the interfund transfer. Thus, the adequacy regarding notice of the November 2013 memo's implications is better addressed in petitioner's companion appeal currently before the OAL. See Francois v. Bd.

13

of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 352 (App. Div. 2010) (another state agency cannot "bind PERS regarding its authority or the pension laws"). Further, it is clear from the record the transfer application was not reversed due to expiration of petitioner's PERS account, since her PERS account had not yet expired when the memo was sent. Rather, the transfer was reversed because petitioner, having not graduated from the academy, could not yet be enrolled in PFRS, and therefore no PFRS account existed into which her funds and service credit could be transferred.

## C.

Finally, petitioner argues the law requires the statutory scheme to be interpreted to her benefit and urges us to force the PERS Board to use its inherent equitable powers to relax the statutory restrictions on her account's expiration.

Our courts have recognized "the inherent power of an administrative agency, in the absence of legislative restriction, to reopen or to modify and to rehear orders previously entered by it." Duvin v. N.J. Dep't of Treasury, Pub. Emps.' Ret. Sys., 76 N.J. 203, 207 (1978) (emphasis added). See also Steinmann v. N.J. Dep't of Treasury, Div. of Pensions, Tchrs.' Pension Annuity Fund, 116 N.J. 564, 573 (1989); Skulski v. Nolan, 68 N.J. 179, 195-96, (1975); Ruvoldt v. Nolan, 63 N.J. 171, 183-84 (1973); In re Van Orden, 383 N.J. Super. 410, 419-

14

20 (App. Div. 2006). In <u>Minsavage for Minsavage v. Board of Trustees, Teachers' Pension & Annuity Fund</u>, on which petitioner relies, the Supreme Court found it appropriate to allow the reopening of a retirement selection "where good cause, reasonable grounds, and reasonable diligence are shown." 240 N.J. 103, 107 (2019).

The record reflects petitioner's inability to satisfy the "good cause, reasonable grounds, and reasonable diligence" justifying reversal in <u>Minsavage</u>. She asserts the request for transfer application "would not have been problematic if she had received notice that [it] did not process," but petitioner herself did not timely contact her former employer to complete the bottom half of the application, inexplicably partially completed by petitioner over a year after separating from PERS-eligible employment but not submitted until well after the two-year deadline. Had she submitted the form to her former employer as required after completing her portion in June 2014, and then forwarded the completed form to PFRS, she would have been on notice long before her PERS account was deactivated, both that her last deduction was made on June 30, 2013, and that the interfund transfer was not yet possible. The Board's power to reopen petitioner's account is specifically limited by the legislative restrictions and regulatory codifications. The "persons intended to be benefited" by public

pensions are all their members, not merely a single former member seeking a result contrary to the interest of other members and to the plain language of the statutory and regulatory schemes.

To the extent that we have not addressed petitioner's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION